UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. James B. Clark |
| v. | : | Magistrate No. 17-3195 |
| AHARON LEV | : | |

**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
ON SPEEDY TRIAL GROUNDS**

Defendant Aharon Lev ("Lev" or the "defendant") seeks dismissal of the Complaint in this matter on speedy-trial grounds, contending that this Court's Standing Orders 20-02 and 20-03 fail to do exactly what the Court promulgated them to do in this time of pandemic-related judicial disruption: toll the deadlines imposed by the Speedy Trial Act, 18 U.S.C. § 3161 (the "STA"). In addition, despite repeatedly consenting to the entry of ends-of-justices continuances, Lev now chooses this moment—when, as the Standing Orders contemplate, obtaining a grand jury quorum in a locked-down New Jersey is all but impossible—to claim that the Government has been so dilatory in not seeking his indictment that the case against him should be dismissed with prejudice. Lev is wrong on both counts, and his motion should be denied.[1]

---

[1] Lev devotes the first five pages of his motion to arguing the merits of the charges against him. See Dkt. No. 33 (the "Motion," or "Mot.") at 1-6. Those arguments, even if valid—which they are not—are irrelevant to this motion, sound in jury nullification, and require no response in this opposition. It suffices to say that Your Honor adjudged the Government's charges supported by probable cause and that the Government remains confident that, when feasible, a grand jury will return an indictment upon presentment.

1

## I. This Court's Standing Orders 20-02 and 20-03.

On or about March 16, 2020, the Chief Judge of this Court entered Standing Order 20-02, which continued, and tolled the STA deadlines in, all criminal jury trials in this District from March 16 through April 30, 2020. Specifically, the order tolled the indictment deadlines in criminal cases charged by complaint, in the event that a grand-jury quorum could not be reached:

> 11. Sitting grand juries in each vicinage of the Court are authorized to continue to meet, unless unable to form a quorum. However, no new grand juries will be empaneled during the period of March 16, 2020 to April 30, 2020, or such other date set by the Court.
>
> 12. In the event that a grand jury is unavailable, or no quorum can be formed, in this District, the 30-day time period for filing an indictment or an information shall be tolled as to each defendant during the time period March 16, 2020 through April 30, 2020, *pursuant to 18 U.S.C. § 3161(b).*

Standing Order 20-02 at 4 ¶¶ 11-12 (emphasis added).

On or about March 16, 2020, the Chief Judge simultaneously entered Standing Order 20-03 (collectively with Standing Order 20-02, the "Standing Orders"), which extended the tolling provisions of Standing Order 20-02 to all cases charged by complaint in the District, pursuant to the STA's ends-of-justice provision, 18 U.S.C. § 3161(h)(7)(A):

> The Court finds the ends of justice served by granting a continuance of the 30-day period established by 18 U.S.C. § 3161(b), during which, in a case commenced by complaint, the United States must either obtain an indictment or file an information, outweigh the best interest of the public and each defendant in a speedy trial and a speedy indictment in a criminal case. Therefore, absent further order of the Court and notwithstanding Paragraph 12 of Standing Order 20-02, the time period of March 16, 2020 through April 30, 2020 shall be "excluded time" in *all* criminal proceedings in this

> District under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), including those proceedings commenced by complaint.

Standing Order 20-03 at 1 ¶ 1. This Court entered both Standing Orders on the docket in this case on March 16, 2020. Dkt. Nos. 26, 27.

## II.   Lev's Challenge to the Standing Orders Is Untimely.

Standing Order 20-02 expressly authorizes individual defendants to request case-specific exceptions to the tolling provisions of the Standing Orders:

> The Court recognizes the trial, procedural, and substantive rights of all litigants, and particularly, the rights of criminal defendants to a speedy and public trial under the Sixth Amendment . . . . Any request by a criminal defendant . . . seeking case-specific relief from any provision of this Order is to be directed to the judicial officer assigned to the matter . . .

Dkt. No. 26 at 2-3 ¶ 5.

Under this Court's Local Civil Rule 7.1, as incorporated by Local Criminal Rule 1.1, the proper vehicle for a challenge to an Order of the Court is a motion for reconsideration, which "shall be served and filed within 14 days of the order or judgment on the original motion." Local Civ. R. 7.1(i); cf. Swift v. Pandey, No. 2:13-cv-00650-BRM-JAD, 2020 WL 1698781 (D.N.J. Apr. 7, 2020) (Martinotti, D.J.) (denying, on its merits, timely filed motion for reconsideration of docket entry adjourning civil trial due to COVID-19). Here, the reconsideration period for the Standing Orders expired on or about March 30, 2020—two weeks before Lev filed his motion.[2]

Accordingly, Lev's motion should be denied as untimely.

---

[2] Notably, had Lev raised a challenge to the Standing Orders by March 30, he would have had no cause for a motion to dismiss, because even he concedes that the Speedy Trial period had not expired at that time.

3

## III. The STA Was Automatically Tolled as of March 16, 2020.

As set forth above, Standing Order 20-02 cites 18 U.S.C. § 3161(b) in tolling the 30-day indictment deadline in the event a grand jury quorum cannot be reached. A Section 3161(b) continuance is, of course, not the same thing as an ends-of-justice continuance under 18 U.S.C. § 3161(h).

Section 3161(b) provides, in relevant part: "If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days." Such an extension is "automatic," United States v. Lopez, No. 1:20-MJ-00046 SAB, 2020 WL 1433158, at *1 (E.D. Cal. Mar. 24, 2020); "no Government motion is required," nor must the Court make any particularized findings, United States v. Mann, 701 F.3d 274, (8th Cir. 2012).

As the Court is doubtless aware, no grand jury in this District has been able to achieve a quorum since Friday, March 13, 2020. Accordingly, Standing Order 20-02 merely reinforced what § 3161(b) would have dictated anyway: a 30-day extension that automatically commenced in this case on or about March 16, 2020, when a grand jury became unavailable in this District.[3] That extension would have expired, at earliest, on April 15, 2020.

But that is not the only automatic tolling provision of the Speedy Trial Act that applies here. This very motion automatically tolled the STA deadlines upon

---

[3] Lev concedes that at least 10 days remained on the STA clock as of March 16, 2020. See Mot. at 8-9.

its filing on April 13, 2020. See 18 U.S.C. § 3161(h)(1)(D). Lev's motion to modify his bail conditions also tolled the speedy-trial clock during the period it was under advisement, from March 20, 2020 through April 6, 2020. See 18 U.S.C. § 3161(h)(1)(H). So, contrary to the pretty but misleading chart at pages 8–9 of his letter brief, Lev's 30-day clock has not expired. Rather, at least 10 days are left on that clock.

Thus, Lev's motion fails under § 3161(b), independently of the Standing Orders and without the need for any ends-of-justice analysis under § 3161(h).

### IV. The Standing Orders Plainly Toll the STA Under 18 U.S.C. § 3161(h)(7)(A).

Even if Lev's motion timely challenged the Standing Orders on their merits—which it does not—and even if the STA had not been independently and automatically tolled by § 3161(b) and this very motion—which it was—Lev's attack on the validity of the Standing Orders would nonetheless be misplaced. As Lev points out (Mot. at 10), the STA requires that an order granting an ends-of-justice continuance set forth the Court's reasons for finding that "the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Standing Order 20-02 articulates a host of reasons in its "WHEREAS" clauses that justify across-the-board tolling of the STA:

- "[A] national emergency has been declared, and the Governor of New Jersey has declared a State of Emergency and Public Health Emergency and has recommended the cancellation of mass gatherings throughout the State in response to the spread of the coronavirus (COVID-19)";

5

- "[T]he Centers for Disease Control and Prevention and other public health authorities have advised public and private agencies to promptly take necessary and appropriate precautions to reduce exposure to COVID-19 and slow the spread of the disease";

- "[J]ury selection in this District frequently involves large jury venire pools, along with many individuals required to travel extensively";

- "[C]ircumstances regarding school closures will increase the impact on parents summoned for jury service";

- "[T]he current limitations on reasonably available COVID-19 testing increase the uncertainty of the health status of summoned jurors and others"; and

- "[A]s a public institution committed to the sound administration of equal justice under the law, this Court must take reasonable and prudent actions to further that mission."

Standing Order 20-02 at 1; accord Standing Order 20-03.

Standing Order 20-02 goes on to set forth specific findings that the accommodations ordered by the Court are necessary to address those concerns by:

- "[F]urther[ing] public health and safety, the health and safety of Court personnel, counsel, litigants, other case participants, jurors, security personnel and the general public";

- "[R]educ[ing] the number of gatherings necessarily attendant to trial jury selection in all vicinages of this Court"; and

- "[M]inimiz[ing] travel by participants in Court proceedings, (particularly travel by public conveyance)."

Standing Order 20-02 at 1; accord Standing Order 20-03.

As noted above, the Court entered both Standing Orders on the docket in this case on March 16, 2020 (Dkt. Nos. 26, 27), thereby notifying Lev that this matter was continued. Lev contends that this was not "case-specific" enough to

6

exclude time under 18 U.S.C. § 3161(h)(7)(A), even though, by docketing the Standing Orders, the Court "set[] forth, in the record of the case, . . . in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." Lev offers no authority for his apparent proposition that the Court had to explain in a separate hearing or order, for example, why the absence of a grand-jury quorum on account of a public health crisis in *all* cases in the District also necessarily applies in *this* case, so as to satisfy § 3161(h)(7)(B)(iii). Or, with § 3161(h)(7)(B)(i) in mind, to repeat the Chief Judge's explanation that "the sound administration of equal justice under the law" requires "reasonable and prudent actions" such as continuing Lev's case, along with all others.

Lev says he is "aware, of course," of the Standing Orders, Mot. at 9, but his follow-on challenge to their applicability in this case would render them meaningless. The District Courts, including in this Circuit, disagree, and have found analogous COVID-19-responsive standing orders to "follow[] the procedure that the Speedy Trial Act requires." United States v. Briggs, No. 2:20-MJ-00410-JDW, 2020 WL 1939720, at *2 (E.D. Pa. Apr. 22, 2020).

Lev next contends that "[t]he government could have indicted Mr. Lev, as Standing Order 20-02 authorized sitting grand juries to continue to meet," Mot. at 11 n.6, which it did, but only theoretically. In fact, no grand jury has been in session since then, which is the very situation the Standing Orders anticipated. As explained above, Standing Order 20-02 reiterated the mandate of 18 U.S.C. § 3161(b) that the indictment deadline would be tolled by at least 30 days in the

absence of a grand-jury quorum. Standing Order 20-02 was also immediately supplemented by Standing Order 20-03, which tolled all cases on complaint precisely because grand jury quorums cannot be met. More fundamentally, in light of the findings supporting the Standing Orders, Lev cannot plausibly suggest that all criminal cases charged by complaint in this District should be dismissed if a grand-jury quorum cannot be obtained within 30 otherwise non-excludable days—as is currently the case—due to a publicly declared State of Emergency arising from a global pandemic.

The cases cited by Lev are entirely inapposite, as they all involve continuance orders that, unlike the Standing Orders here, were "devoid . . . of specific findings regarding the need or justification for [the] delays." United States v. Doran, 882 F.2d 1511, 1515 (10th Cir. 1989), *cited in* Mot. at 10. Far more instructive are ends-of-justice continuances entered in the wake of natural or man-made disasters, which have repeatedly been approved by Courts of Appeals. As the Ninth Circuit aptly put it, in the wake of the 1981 eruption of Mount Saint Helens:

> This Court is quick to pay homage to the Sixth Amendment to the Constitution of the United States and its implementation, The Speedy Trial Act. Except for the right of a fair trial before an impartial jury no mandate of our jurisprudence is more important. But the record here contains an acknowledgment of the appreciable difficulty expected with an incident/accident of earth-shaking effect, although the various impacts are not detailed.

Furlow v. United States, 644 F.2d 764, 768-69 (9th Cir. 1981) (rejecting STA challenge to ends-of-justice continuance).

8

Similarly, in the wake of the terrorist attacks of September 11, 2001, a District Judge in the Southern District of New York explained that even *nunc pro tunc* continuances are permissible under the STA in times of public crisis:

> [T]here is simply no question that the exclusion of time from September 11 to the present is justified in the interests of justice. The administration of justice in this District ground to a temporary halt as a result of acts of warfare against the United States that created a public emergency. The larger interests of justice in the District—not to mention supervening necessity—surely required suspending proceedings in this case.

United States v. Correa, 182 F. Supp. 2d 326, 329 (Sept. 25, 2001).

Likewise, here, the current COVID-19 crisis has necessitated District-wide—indeed, virtually nationwide—ends-of-justice continuances. As one nearby court recently put it:

> Many types of emergencies, including natural disasters and terrorist attacks, have been found to justify Speedy Trial Act continuances. The current emergency has resulted in an equal if not greater level of disruption. This disruption is demonstrated by the fact that on March 31, 2020, the only remaining active grand jury in the Southern District of New York failed to secure the quorum necessary to vote on indictments.

United States v. Carillo-Villa, — F. Supp. 3d —, 2020 WL 1644773, at *3 (S.D.N.Y. Apr. 2, 2020) (citations omitted); accord United States v. Guadron-Diaz, No. CR19-0230EMC, 2020 WL 1845315, at *1 (N.D. Cal. Apr. 10, 2020) ("COVID-19 is a global pandemic. To avoid the spread of COVID-19, the state of California is currently ordered to shelter in place . . . . An exclusion of time is therefore appropriate in this case because: The nation's public health interest in stemming the spread of COVID-19 outweighs the interest of the public and the defendant in a speedy trial." (quotation marks and citation omitted)); United

States v. Reyes-Canales, Crim. No. JKB-17-589, 2020 WL 1955578, at *2 (D. Md. Apr. 23, 2020) (same); United States v. McKnight, No. CR18-16 TSZ, 2020 WL 1872412, at *4 (W.D. Wash. Apr. 15, 2020) (same); United States v. Chivers, No. 1:19-cv-119, 2020 WL 1438343, at *12 (S.D. Ohio Mar. 23, 2020) (same); United States v. Brown, No. 2:19-cr-135-RAH, 2020 WL 1496552, at *1 (M.D. Ala. Mar. 23, 2020) (same); In re Admin. Order Regarding Computation of Time Under the Speedy Trial Act, No. 2:20mc7, 2020 WL 1430429, at *2 (E.D. Va. Mar. 23, 2020) (same); United States v. Peggs, No. 1:19-CR-00304-2, 2020 WL 1495413, at *1 (S.D. W.Va. Mar. 23, 2020) (same).

Lev's challenge to the validity of the Standing Orders is even more surprising in light of his own recent (and successful) reliance on those very orders in his emergency motion for permission to escort his wife and children out of the United States to escape the COVID-19 threat. In that motion and related submissions, made barely a month ago, Lev invoked the Standing Orders in support of his request, without a hint that he was about to seek a pre-indictment dismissal with prejudice on the grounds that the very same orders are insufficient to address his Speedy Trial rights. See Dkt. No. 24 (Mar. 20, 2020 Mot. to Modify Bail Conditions) at 1 ("The national health crisis and the recent Standing Orders from the Court will no doubt delay the return of an indictment, but Mr. Lev stands fully prepared to see it dismissed *when returned*." (emphasis added)); Dkt. No. 29 (Mar. 27, 2020 Supp. Ltr. in Support of Mot. to Modify Bail Conditions) at 1 (citing the "global pandemic" and New Jersey's status as "one of the hardest hit states in the United States"). Indeed, Lev now seeks dismissal

with prejudice *despite* acknowledging that, "[b]ecause of the COVID-19 pandemic, a speedy indictment is all but impossible" under current circumstances. (Mot. at 14.)

But even if the Standing Orders, as entered on this Court's docket, were not sufficiently case-specific to pass muster, dismissal still would not be warranted. Under 18 U.S.C. § 3161(h)(7)(A), a continuance results in excludable time only if "the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by" granting the continuance "outweigh the best interests of the public and the defendant in a speedy trial." But, although those "findings must be made, if only in the judge's mind, before granting the continuance," Zedner v. United States, 547 U.S. 489, 506–07 (2006), those findings "need not be placed on the record at the time when the continuance is granted." United States v. Fields, 39 F.3d 439, 443 (3d Cir. 1994). Rather, they "must be put on the record by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)." Zedner, 547 U.S. at 507 (footnote omitted). Therefore, this Court can supplement the record now, if it finds a necessity for doing so, with additional findings on why the very same confounding factors impeding the prosecution of *every* case in this District are also impeding the prosecution of *this* case.

In sum, the Standing Orders are more than sufficiently specific to satisfy the STA, as evidenced by holdings of federal Courts of Appeal in similarly severe public emergencies, rulings of other district courts grappling with the current crisis, and Lev's own prior reliance on the Standing Orders in seeking relief from

11

this Court. And, in any event, this Court can supplement the record, if need be, with its reasons for docketing the Standing Orders on this case. Lev's speedy-trial challenge is meritless.

### V. Even if the STA Had Been Violated, Any Dismissal Should Be Without Prejudice.

Even were the Court to find that the Standing Orders, and the Court's adoption of those orders in this case, did not suffice to toll the STA clock and that clock had expired, this Court should not dismiss the Complaint with prejudice. In deciding whether to dismiss with or without prejudice, the Court must consider, among other factors, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the STA] and the administration of justice." 18 U.S.C. § 3162(a). This Court also must consider and balance "the length of the delay, the reasons for the delay, and the prejudice from the delay to defendant." Gov't of the V.I. v. Bryan, 818 F.2d 1069, 1076 (3d Cir. 1987).

The first factor—the seriousness of the offense—"ordinarily focuses solely on the charge rather than, *e.g.*, the strength of the government's case or the likely outcome of the proceedings. To do otherwise would inordinately complicate and extend the analytical process." United States v. Mancuso, 302 F. Supp. 2d 23, 26 n.1 (E.D.N.Y. 2004).[4] Lev is currently charged with mail fraud and

---

[4] Given this standard, the Government declines Lev's invitation to litigate the merits of the case, but does represent to the Court that the charges in the Complaint and in the impending indictment are based on, among other evidence, email correspondence among the conspirators and others regarding the fraudulent scheme; documentation of the scheme's planning and execution; financial data regarding the disposition of proceeds of the fraud; eyewitness

12

conspiracy to commit mail fraud resulting in more than $5 million in harm, but, as he is aware, the Government's evidence shows more than $8 million in misappropriated property.[5] At least one judge of this District has found a charge of fraud resulting in approximately $4 million in alleged losses to be "serious" under the first § 3162(a) factor. Mir v. United States, No. 14-cv-3627 (JLL), 2017 WL 498713, at *1, 5 (D.N.J. Feb. 7, 2017) (Linares, D.J.); see also United States v. Hunter, 319 F. App'x 758, 760 (11th Cir. 2008) (alleged fraudulent scheme "resulting in the improper appropriation of approximately 2.5 million dollars" qualified as serious offense (brackets omitted)); Mancuso, 302 F. Supp. 2d at 26 (charge of "fraudulently preparing and signing checks and then transporting them across state lines" was serious offense); United States v. Zedner, No. 96-CR-285 TCP, 2006 WL 3050888, at *3 (E.D.N.Y. Oct. 13, 2006) (bank-fraud charges "are undoubtedly serious"). It should also be noted that each count of the Complaint in this case carries a 20-year statutory maximum term. See United States v. Duranseau, 26 F.3d 804, 808 (8th Cir. 1994) (offense carrying 10-year maximum "is serious").

---

testimony regarding the inner workings of the scheme; and party admissions to overt acts taken in furtherance of the scheme.

[5] Because Lev has agreed to—and often requested—continuances postponing the indictment in this case, the Government has not produced Rule 16 discovery, because it is not yet due. Lev's counsel has, however, been afforded repeated examples, descriptions, and explanations of the Government's evidence, as well as ample opportunities to discuss the legal merits of the case. In light of this history, defense counsel's protestations about the lack of discovery (see Mot. at 13-14) ring hollow.

As to the second factor, the facts and circumstances leading to an STA dismissal, Lev argues that the long pre-indictment delay "indicat[es] that [the Government] does not consider this case a priority." Mot. at 11. The history of this case demonstrates otherwise.

Of the 12 continuances entered in this matter before the Standing Orders took effect, one was necessitated by Lev's own conduct and at least another five[6] were procured at Lev's request or caused by his counsel's unilateral delays.

- The January 11, 2019 continuance (Dkt. No. 14) was necessitated by Lev's abrupt and unexpected termination of plea communications the prior day, on or about January 10, 2019.

- On or about March 18, 2019, the Government sent a proposed further continuance to Lev's then-defense counsel to accommodate an impending change of counsel, but did not receive a signed copy from Lev's new counsel until on or about March 21, whereupon the request was immediately filed and granted. See Dkt. No. 16.

- The May 15, 2019 continuance (Dkt. No. 18) was procured at defense counsel's request, made at a meeting with the Government earlier that day, which was also held at defense counsel's request.[7]

- On or about July 16, 2019, defense counsel requested a further continuance in a phone call to the Government. The Government consented and emailed the proposed continuance to defense counsel, who returned a signed copy on or about July 25, 2019. The Government promptly submitted the request, and the Court granted it the same day. See Dkt. No. 19.

---

[6] The undersigned did not join the case until after the first five continuances were entered, and so cannot speak to the causes for those continuances (though it is reasonable to assume that the initial continuance was granted for the usual reason: to allow the defendant and his counsel to gain an initial familiarity with the case and with each other).

[7] The Government will provide the Court, upon request, with email correspondence documenting the dates and communications set forth in this section.

14

- On or about August 30, 2019, defense counsel requested another meeting with the Government, stating, "Obviously I would prefer that we meet before any indictment." After several postponements by defense counsel, the meeting took place on or about September 19, 2019, at which time defense counsel asked the Government to postpone Lev's indictment until after September 27, 2019, when defense counsel wished to make a written submission to the Government. The Government consented to the defense's proposal and sent the requested continuance to defense counsel on or about September 23, 2019 and again on September 24, 2019. However, defense counsel did not sign and return it until September 25, 2019, whereupon the request was immediately filed and granted. See Dkt. No. 20.

- On or about September 27, 2019, instead of delivering the promised submission, defense counsel requested more time to prepare it. In response, the Government reminded defense counsel that Lev was to be indicted on October 7, 2019. Defense counsel then called the Government to ask for a two-week postponement of the indictment, promising to deliver the submission by October 14, 2019, and the Government again consented.

- Defense counsel did not contact the Government again until October 15, when he once again requested "just . . . a little more time." Defense counsel finally produced the submission on or about October 18, 2019, but then failed to respond to the Government's calls or emails until on or about November 12, 2019, when he promised to call the Government on or about November 15, 2019. Defense counsel actually called on or about November 19, 2019, less than a week before the September 25 continuance was to expire. At that point, both parties agreed that it was necessary to obtain a further continuance, which the Court granted on or about November 22, 2019. See Dkt. No. 22.

- On or about January 24, 2020, the Government sent a final proposed continuance to defense counsel, who agreed to it but failed to sign and return it until January 29, 2020, at which time the Government promptly submitted it and the Court granted it. See Exs. L-M; Dkt. No. 23.

- The January 29 continuance expired on March 24, 2020, by which time the automatic § 3161(b) continuance and the Standing Orders had all been in place for more than a week.

15

In sum, as Lev puts it, "there is a reason that nearly 2.5 years after the Complaint was signed and more than two years since Mr. Lev's arrest, the government has not indicted Mr. Lev" (Mot. at 5)—Lev and his counsel repeatedly sought and agreed to continuances. Cf. United States v. Lattany, 982 F.2d 866, 883 (3d Cir. 1992) ("Defendants cannot be wholly free to abuse the system by requesting [ends-of-justice] continuances and then argue that their convictions should be vacated because the continuances they acquiesced in were granted."). That does not warrant dismissal with prejudice.

The third § 3162(a) factor—the impact of reprosecution on the administration of the STA and of justice—also militates against a dismissal with prejudice. As demonstrated above, the long delay in indicting this case was largely of Lev's own making. The speedy administration of justice is hardly advanced by rewarding such behavior with the ultimate get-out-of-jail-free card. On the contrary: the type of gamesmanship engaged in by Lev and his counsel in the past year treats the Speedy Trial Act as a mere loophole to be exploited whenever possible, at whatever cost. Lev's attempt to do so now, in the form of a facial challenge to valid orders designed to save lives during a global pandemic—the *only* such challenge attempted by any defendant in this District—should be rejected.

Finally, even were there an STA violation, its impact was "insubstantial," amounting only to a few weeks' delay, and there is no evidence of "any attempt by the Government to gain a tactical advantage" or act in "bad faith," given that the Government reasonably relied on the Standing Orders. United States v.

Richardson, 537 F.3d 951, 958 (8th Cir. 2008). Nor does Lev assert "that the preparation of his defense was impeded by the violation." Id. at 958; see also United States v. Lewis, 611 F.3d 1172, 1180 (9th Cir. 2010).

In light of all these factors, if this Court finds a Speedy Trial Act violation, it should dismiss the Complaint *without* prejudice. See United States v. Hernandez, 863 F.2d 239, 244 (2d Cir. 1988) (district court abused its discretion by dismissing with prejudice where charges were serious, delay was slight, and defendant presented no evidence that his defense was prejudiced).

## VI. Conclusion

Lev's motion should be denied in its entirety. But, if this Court were to grant it, the only appropriate remedy would be a dismissal without prejudice.

Respectfully Submitted,

CRAIG CARPENITO
 United States Attorney

By: Sarah A. Sulkowski
Assistant U.S. Attorney